CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 04 2022

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Danville Division

| | | |
|---|---|---|
| **JAMES MICHAEL ISERNIA,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CASE NO.**  4:22CV00022 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANVILLE REGIONAL MEDICAL** | ) | |
| **CENTER, LLC,** | ) | |
| **Serve: CT Corporation System** | ) | **TRIAL BY JURY DEMAND** |
|     **Registered Agent** | ) | |
|     **4701 Cox Road, Suite 285** | ) | |
|     **Glen Allen, VA 23060** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **HSCGP, LLC,** | ) | |
| **Serve: CT Corporation System** | ) | |
|     **Registered Agent** | ) | |
|     **4701 Cox Road, Suite 285** | ) | |
|     **Glen Allen, VA 23060** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN DOE CORPORATIONS** | ) | |
| **whose true names are unknown,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, James Michael Isernia, M.D. ("the Plaintiff" or "Dr. Isernia"), by counsel, hereby presents his Complaint against Defendants Danville Regional Medical Center, LLC, HSCGP, LLC, and John Doe Corporations, whose true names are unknown (collectively, "Defendants" or "SOVAH"), jointly and severally.

### I. JURISDICTION AND VENUE

1.  HSCGP, LLC is a Delaware limited liability company that owns and/or operates hospitals

and clinics in Virginia and elsewhere and does business as LifePoint Health.  HSCGP, LLC has its principal place of business in Tennessee and is licensed to do business in Virginia by the State Corporation Commission.

2.   Danville Regional Medical Center, LLC is made up of two healthcare facilities in Martinsville and Danville, Virginia, and is, upon information and belief, owned and/or operated by HSCGP, LLC.  Danville Regional Medical Center, LLC is a Delaware corporation, which has its principal place of business in Tennessee and is licensed to do business in Virginia by the State Corporation Commission.

3.   John Doe Corporations are corporations who employed individuals who made defamatory statements and/or tortiously interfered with Plaintiff's business expectancies and/or contract, and whose names and principal addresses are unknown, other than that the corporations are a part of the LifePoint Health organization of affiliated entities that own and operate hospitals and other healthcare providers across the country. The actual names of the John Doe Corporations will be added when they are discovered.

4.   Dr. Isernia is a resident of Danville, Virginia, and worked as a Physician at SOVAH, until his unlawful termination on or around January 4, 2022.

5.   Dr. Isernia contracts with Martinsville Physician Practices, LLC, but works under the supervision and control of Defendants.

6.   According to SOVAH's website, the Danville campus employs 1300 people, has over 175 physicians and allied health professionals, and provides over 25 medical specialties.   The Martinsville campus employs over 700 people, has over 100 physicians and allied health professionals, and provides over 22 medical specialties.

7.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because

there is diversity of citizenship between the parties in a matter where the amount in controversy exceeds $75,000.

8.  Plaintiff, a domiciliary of the Commonwealth of Virginia, advances and state law claims against a former employer with a place of business inside the Commonwealth of Virginia, but Defendants' principal place of business and headquarters are within the state of Tennessee, thus Defendants are domiciled outside of the Commonwealth of Virginia.

9.  In this action, Plaintiff advances defamation *per se* claims, tortious interference claims related to Plaintiff's contract and business expectancy, and whistleblower retaliation claims pursuant to Va. Code § 40.1-27.3(A)(1).

10. A substantial part of the acts and/or omissions of Defendants from which the causes of action arise, occurred within the Western District of Virginia.  Due to their contacts within the Commonwealth of Virginia, Defendants avails themselves to the jurisdiction of this Court.

11. Venue is appropriate as a substantial part of the acts and/or omissions of the Defendants from which the causes of action arise occurred in Martinsville, Virginia, located within the Western District of Virginia.  *See* 28 U.S.C. § 1391(b)(2).

## II. STATEMENT OF FACTS

10. Dr. Isernia is an accomplished and dedicated physician with more than twenty-five years of experience practicing medicine.  He has been the only internal medicine specialist or family practice provider in the Martinsville area that has both a hospital and clinic practice.

11. Dr. Isernia has worked at SOVAH in various capacities and has held various positions, including the Director of Cardiac Rehab, the Director of Home Care, and the Medical Director of Hospice for the past ten years.

12. Dr. Isernia has served as President of the Medical Staff and Director of Peer Review for

two terms each, he is the current Physician Liaison for Business Health, Liaison for Infectious Diseases, and serves on the Board for Antibiotic Stewardship with the Pharmacy.  He is also the local physician for the Martinsville City Jail.  Dr. Isernia is the outpatient clinic preceptor, overseeing third year medical students at the University of Virginia as well as nurse practitioner students from multi-accredited programs, and served as a Hospitalist at Apogee Physicians in Martinsville, VA ("Apogee").  However, after Dr. Isernia's wrongful termination from SOVAH as described below, SOVAH informed Apogee that he was no longer allowed to work for Apogee, despite the fact that at no time did Dr. Isernia ever lose any privileges.

13. Dr. Isernia has received many awards for his service as a physician, including being nominated for an Outstanding Leadership Award, and being nominated as Physician of the year three times.

### The COVID-19 Pandemic Wreaks Havoc on the Medical Profession

14. With the onset of the Coronavirus pandemic in early 2020, the medical community in Martinsville contended with a severe strain in providing medical services to the community.

15. Due to the COVID-19 pandemic, SOVAH experienced staffing shortages. Dr. Isernia's nurse practitioner, who was responsible for assisting Dr. Isernia in the overflow care of his patients, was moved by SOVAH from under his practice to Occupational Health, another department entirely. Other staff members who worked with Dr. Isernia were pulled to work the front entrance of the Medical Office Building to check for temperatures and limit visitors or to aid other practicing physicians.

16. Dr. Isernia complained many times to SOVAH about the lack of proper staffing that Defendants were obligated to provide and was told to "stick to doctoring" by those in managerial positions at SOVAH. Dr. Isernia complained about improper staffing levels and the need for

properly trained staff to ensure patient and employee safety.  It was these frequent reports and requests from Dr. Isernia to SOVAH that caused SOVAH to retaliate against Dr. Isernia.

**Defendants Launch a Series of Retaliatory Actions Against Dr. Isernia
in Response to His Complaints**

17. Around December 2020, Defendants launched an "audit" into Dr. Isernia's prescribing practices.  This audit was intentionally executed in bad faith and with actual malice by SOVAH. Compliance and Pharmacy/Quality team members audited ten (10) random patients from the list of printed/faxed prescriptions report from September 2020 and October 2020.

18. SOVAH claims the results of that audit indicated that improvements were not evident from earlier recommendations that had been given to Dr. Isernia, and that Dr. Isernia had failed to comply with the best practices and tenets of chronic opioid management per CDC, state-specific regulations, and practice-specific standards of practice.

19. The audit into Dr. Isernia's prescribing practices was precipitated by Dr. Isernia having allegedly printed/faxed 420 controlled substance prescriptions in May 2020, and that he failed to use the electronic prescriptions for controlled substance ("EPCS") functionality when doing so.

20. Dr. Isernia has a voluminous practice — both a hospital and clinic practice, patients in at least five nursing homes, clients he sees through home visits, patients battling methamphetamine addiction for whom he prescribes Methadone, and a large number of patients who suffer from asbestosis, lung cancer, silicosis, black lung, severe arthritis, and rheumatoid arthritis, among other conditions — that necessitates his prescribing practices.

21. In reference to not using the EPCS feature, Dr. Isernia updated his patient charts and maintained documentation under the e-prescriptions folder of all the prescriptions sent via EPCS.

22. EPCS is considered a best practice in the medical field and at SOVAH, but its usage was not a federal requirement at the time SOVAH audited Dr. Isernia in June 2020.

23. SOVAH alleges that the results of the December 2020 audit indicated that there were "concerns" that Dr. Isernia was "failing to comply with the best practices and tenets of chronic opioid management per CDC, state-specific regulations and practice-specific standards of practice." These allegations were false.

24. In February 2021, an internal corporate group met to review the initial findings and concerns of the December 2020 audit, and on March 9, 2021, decided to issue a final written warning to Dr. Isernia regarding his prescribing practices, specifically his failure to utilize the EPCS process for transmitting controlled substance prescriptions. However, at all times, Dr. Isernia treated his patients within state guidelines and provided opioid therapy to prevent opioid dependency, opioid misuse disorder, and other controlled substance dependency.

25. Prior to the issuance of this "final" written warning, Dr. Isernia had never received any discipline nor reprimands for his work or his prescribing practices in his twenty-five years as a medical practitioner, had never been summoned to Peer Review, and had not been named in any medical malpractice actions.

26. The audit process was intentionally retaliatory in its entire step-by-step procedure. Dr. Isernia was not a part of the audit process and the individuals who were contacted who purported to have "knowledge about the facts" or individuals from whom information was sought, did not include any of Dr. Isernia's personal office staff or nurses. No information was sought from any of Dr. Isernia's personal office staff, nurses, or anyone with any medical knowledge. In effect, the individuals that were audited would have no knowledge about Plaintiff's recordkeeping or prescribing practices. This was intentional.

27. Further, the methods that were used to conduct the audit were flawed and did not take into account how Dr. Isernia's practice provided patient care and completed administrative tasks. In

fact, Dr. Isernia had no knowledge of the audit until over a year after it had been implemented.   At no time did SOVAH attempt to work with Dr. Isernia to properly assess his treatment of patients or his follow-through on administrative duties.

28. Every office maintains their files differently and, depending upon the date a file is scanned and by whom, it could be located in a different folder within that medical record.  Depending on which office filed reports, and how that particular physician preferred their reports labeled, great variation existed in labeling and the specific folders where such reports were located.  There existed no uniform practice and the added staff placed in Dr. Isernia's to cover such duties were ill-trained to provide the required level of assistance in violation of SOVAH's duties to Dr. Isernia and his patients.

29. Although the auditor could not find the relevant information that he or she was seeking, including "supportive documentation for chronic opioid prescribing," proper documentation existed. The results were not filed in the location in the electronic medical records system where the auditor expected to find these records due to the errors and omissions of SOVAH as described above. However, despite the lapses in proper record-keeping of SOVAH, Dr. Isernia maintained adequate records (including, but not limited to tests, reviews, labs, etc.) for each of his patients and according to legal and medical guidelines.  Essentially, the auditor simply did not look in the correct location, nor did they ever submit a basic inquiry to Dr. Isernia regarding the same.

30. Dr. Isernia maintained patient records and narcotic files in his office because, at times in the past when scanning duties were outsourced to other offices, those patient and narcotic files were lost or scattered in different places.  This is another issue that Dr. Isernia complained of to SOVAH prior to SOVAH's retaliation. Dr. Isernia maintained these records in his office for safekeeping because he knew that SOVAH could not fulfill its duty to maintain proper records.

31. On April 5, 2021, Pam Kane of SOVAH made a false and malicious complaint to the Department of Health Professions ("DHP"). Ms. Kane's complaint to the DHP was not privileged and thus can be published to Dr. Isernia's colleagues, his patients, and the public at large. The complaint was written in retaliation against Dr. Isernia and was at all times fraudulent, transmitted in bad faith, and made with actual malice. The entire defamatory complaint has been appended to this pleading and made a part hereof as **EXHIBIT A.**

32. The report filed by Ms. Kane was filed to inform DHP pursuant to Virginia Code Section 54.1-2400.6(A)(4), that it had taken disciplinary action against Dr. Isernia, including a final written warning "as a result of conduct that may cause injury to patients." Of note, although the warning was deemed, a "final written warning," this term was misleading as there had existed no prior warnings issued to Dr. Isernia. Specifically, SOVAH, through Ms. Kane, alleged concerns that Dr. Isernia's practice patterns of prescribing opioids to patients may cause harm to those patients and were not in conformity with requirements for opioid prescribing. This was false.

33. On April 26, 2021, Dr. Isernia provided a response vehemently denying the accusations against him and providing written support for the fact that his recordkeeping and prescribing practices had not violated any rules, guidelines, or laws.

34. On August 10, 2021, Dr. Isernia received a Notification of Investigation on behalf of DHP. The investigation was prompted by the complaint filed with DHP by SOVAH. Dr. Isernia was required again to submit a response regarding this recordkeeping and prescribing practices. He properly did so and denied all allegations of the Complaint.

35. Dr. Isernia provided a written response to DHP's request, along with documentation including summaries for each patient explaining treatment, on September 10, 2021, and a follow-up letter on September 30, 2021.

36. On December 10, 2021, Dr. Isernia received notice of the results of a follow-up audit performed by SOVAH, which alleged "continued non-compliance with state and practice specific regulations for the management of patients receiving chronic opioid therapy by: Failure to document reasonable justification for reasons to exceed 120 MME/day; Failure to consistently prescribe naloxone for any patient at risk; and Failure to document a comprehensive treatment plan and rationale to continue opioid therapy every 90 days." Upon information and belief, this finding was predicated upon intentionally false and misleading information supplied to DHP by SOVAH.

37. Dr. Isernia was placed on administrative leave on December 21, 2022, and December 22, 2022, and was terminated from SOVAH on January 4, 2022, part and parcel to the maliciously fraudulent complaint that was drafted by SOVAH as a tool to retaliate against him.  However, DHP was able to see through SOVAH's subterfuge and on March 2, 2022, mailed a letter to Dr. Isernia indicating that the "Board of Medicine has completed its review of the investigative report regarding disciplinary action taken against you by [SOVAH] . . . the Board has determined that it will end its inquiry at this time. . . . [t]he disposition taken in this matter is not a disciplinary action [by DHP]."  This document has been appended to this pleading and made a part hereof as **EXHIBIT B**.  SOVAH's false complaint was weighed by the DHP and, upon information and belief, the DHP found no merit to any allegation.

38. Since his wrongful termination, Dr. Isernia has been contacted by former patients who have indicated that under their current care regimens, and in contrast to their care under Dr. Isernia, they are receiving greater volumes of opioids including the addition of Benzodiazepines in some cases. This contrasts the moderate and reasonably calculated treatment as per the standard of care in Virginia, in which Dr. Isernia treated his patients prior to his wrongful termination and supports a finding that the fabricated complaint by SOVAH was a mere pretext masking invidious retaliation.

## COUNT I:  DEFAMATION *PER SE*

39. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

40. With regard to Dr. Isernia's prescribing practices and recordkeeping practices, the statements that Dr. Isernia was "failing to comply with the best practices and tenets of chronic opioid management per CDC, state-specific regulations and practice-specific standards of practice" and had engaged in "continued noncompliance with state and practice specific regulations for the management of patients receiving chronic opioid therapy" are false, as the conclusions are based upon incomplete if not outright erroneous assertions of fact.

41. Dr. Isernia did not violate any rules or laws related to his recordkeeping or his prescribing practices.  Staff had not properly loaded the records into the data base because (1) there was little consistency in how this was done; (2) staff were not trained on how to do this; and (3) there was not enough staff to accommodate Dr. Isernia's voluminous practice.

42. SOVAH knew these statements were false and published them with malice and reckless disregard for the truth.  For instance:

     a.     SOVAH knew that Dr. Isernia's nurses maintained patient files in their office (pertaining to the Urine Drug Screens and PMP inquiries).  SOVAH knew this information was kept in the office because the scanning (filing) is backed up due to lack of staffing, and often when scanning files was outsourced to other offices, the files would become lost or scattered. This is not an unknown factor to upper management and has been discussed and complained of on many occasions by Dr. Isernia and his staff.

     b.     SOVAH knew the PMP log itself could have been checked by any manager, and management could have easily ascertained that Dr. Isernia or his designee had actually been complying as mandated.

c.      SOVAH knew urine drug screens that had been requested and collected, often did not have reports generated by the lab, and that there was a back-up in generating reports because the lab tech was on maternity leave.  The collections were run, the reports simply had not been generated, which was not Dr. Isernia's responsibility.

43. SOVAH's ill-will and malice was generated by Dr. Isernia's repeated complaints for more staff to assist with required medical record organization.

44. SOVAH's knowingly false statements formed the basis of a cause of action for defamation *per se*.

a.      SOVAH's statements are actionable *per se* as the statements impute to Plaintiff an unfitness to perform his duties.

b.      As a medical doctor, such false accusations could lead to formal discipline, termination from employment, or a loss of his medical license.

45. As a proximate result of the false, malicious, insulting, defamatory and slanderous remarks, Plaintiff has suffered injury to his reputation, humiliation, and embarrassment.

46. At all times material hereto, SOVAH engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Dr. Isernia, so as to support an award of punitive damages.

47. The above-described acts by SOVAH constitute defamation *per se* under the common law of Virginia.

## COUNT II:  TORTIOUS INTERFERENCE

48. Dr. Isernia incorporates by reference herein the preceding paragraphs of this Complaint.

49. The Supreme Court of Virginia has stated that in order to prove a case of tortious interference, the plaintiff must show: 1) the existence of a valid contract or business expectancy;

2) knowledge of the contract or business expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the contract or business expectancy; and 4) resultant damage to the party whose contract or expectancy has been disrupted.

50.  Plaintiff had a valid contract, business expectancy, and business relationship with Martinsville Physicians, LLC and Apogee.

51. Plaintiff worked for SOVAH for many years and was aware of the contract and business expectancy Plaintiff had with Martinsville Physicians Practices, LLC and Apogee.

52. SOVAH intentionally interfered with Plaintiff's contract and business expectancy by making defamatory statements regarding Plaintiff's prescribing and recordkeeping practices, statements it knew to be false, which resulted in the launch of an unfounded audit and investigation, and unwarranted disciplinary action being taken against him.

53. SOVAH used the improper means of defamation to induce or cause a breach in Plaintiff's contract and valid business expectancy with Martinsville Physicians, LLC and Apogee.

54. SOVAH's conduct was committed with malice or with a degree of recklessness or negligence that amounts to a conscious disregard of the rights of others.

55. SOVAH's intentional and malicious statements regarding the manner in which Dr. Isernia performed or purportedly failed to perform his duties, and the complaints against Dr. Isernia, have damaged Plaintiff in many ways, but most notably the loss of his position with Apogee and Martinsville Physicians, LLC.

56. As a direct and proximate result of SOVAH's conduct, Dr. Isernia has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to his professional and personal reputations, financial loss, has been hampered in the conduct of his business and affairs, and other damages.

12

57. As a result, SOVAH is liable to Dr. Isernia for tortiously interfering with his business contract and business expectancy.

## COUNT III: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY/PROSPECTIVE ECONOMIC ADVANTAGE

58. Dr. Isernia incorporates by reference herein the preceding paragraphs of this Complaint.

59. Dr. Isernia, after his separation from employment with SOVAH, attempted to gain other employment. Dr. Isernia had a reasonable expectation to gain employment with several employers given his credentials, accreditations, and wide range of experience.

60. SOVAH intentionally and maliciously smeared the professional reputation of Dr. Isernia to his colleagues and his base of former patients to such a degree as to interfere with business expectancies and prospective economic advantage.

61. SOVAH also interfered with Dr. Isernia's medical license, which has interfered with his business expectancies and prospective economic advantage.

62. SOVAH had reasonable certainty about Dr. Isernia's business expectancy and prospective economic advantage. Dr. Isernia has more than twenty-five years of medical experience and expected to continue working beyond January 4, 2022 – the date of his unlawful termination. Based on Plaintiff's medical licensure, degrees, and experience, SOVAH should have therefore reasonably expected Dr. Isernia to seek employment elsewhere upon leaving SOVAH.

63. Unfortunately, Dr. Isernia has not been able to secure other employment since his unlawful termination from employment with SOVAH.

64. SOVAH's intentional and malicious statements regarding the manner in which Dr. Isernia performed or purportedly failed to perform his duties, and the complaints against Dr. Isernia, have hampered his ability to obtain employment.

65. At all times, SOVAH had a duty to refrain from unlawful interference. At all times,

SOVAH had a duty to provide accurate and unbiased information without attempting to impugn or mischaracterize the work performance of Dr. Isernia.

66. As a direct and proximate result of SOVAH's conduct, Dr. Isernia has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to his professional and personal reputations, financial loss, has been hampered in the conduct of his business and affairs, and other damages.  Indeed, SOVAH did not even provide Dr. Isernia with required information regarding the continuation of benefits including coverage via COBRA, thus losing multiple benefits for him and his family due to the acts and omissions of SOVAH.

67. As a result, SOVAH is liable to Dr. Isernia for tortiously interfering with his business expectancies and prospective economic advantages.

<h3 style="text-align:center"><u>COUNT IV:  VIOLATION OF VA. CODE § 40.1-27.3(A)(1)</u></h3>

68. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

69. Upon information and belief, SOVAH were at all times relevant, joint employers, integrated employers, and/or apparent agents with Martinsville Physicians, LLC with respect to Dr. Isernia's employment.

70. Although Martinsville Physicians was one of Dr. Isernia's employers, SOVAH was a joint employer because SOVAH shared and co-determined various matters governing the essential terms and conditions of Dr. Isernia's employment.  In fact, SOVAH exercised significant control of Martinsville Physicians' employees, including Dr. Isernia.

71. At the time of Plaintiff's employment, SOVAH had the authority to hire and fire at their hospital; covered day-to-day supervision of Plaintiff, including employee discipline; furnished the equipment used and the place of work; had possession of and responsibility over Dr. Isernia's

14

employment records, including payroll, insurance, and taxes; and also provided Dr. Isernia with formal and informal training. *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) ("The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities. The joint employment doctrine thus prevents those who effectively employ a worker from evading liability by hiding behind another entity.").

72. Because SOVAH has contracted in good faith with Martinsville Physicians Practices, LLC in good faith, and has retained for themselves control of the terms and conditions of employment of their employees, including Dr. Isernia, Dr. Isernia, therefore, brings this charge and requests relief against SOVAH specifically. Moreover, pursuant to 18 VAC 85-20-26, SOVAH were required to at all times, "properly manage patient records." SOVAH utterly failed in this regulated and required duty. Further, Dr. Isernia's repeated complaints to supervisors at SOVAH about SOVAH's failures to properly manage patient records occurring prior to SOVAH's complaint to the DHP and after, served as the but-for cause of his termination. SOVAH retaliated against Dr. Isernia for engaging in these protected activities.

73. At the time Plaintiff was employed with SOVAH, Dr. Isernia was protected from retaliation by the Virginia Whistleblower's Protection Act, § 40.1-27.3.

74. Prior to being terminated, Dr. Isernia was performing his work at a satisfactory level and meeting the legitimate business expectations of SOVAH.

75. During his employment with SOVAH, Dr. Isernia experienced retaliation based upon his engaging in protected activity, ultimately culminating in being terminated.

76. SOVAH would not have terminated Dr. Isernia, or taken the other discriminatory actions against him, but for his protected activities.

78. Plaintiff seeks as damages for this claim, (i) an injunction to restrain continued violation

of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs.

79. The above-described acts by SOVAH and employees of SOVAH constitute retaliation in violation of Virginia Code § 40.1-27.3.

WHEREFORE Plaintiff James Michael Isernia, MD prays for judgment against Defendants Danville Regional Medical Center, LLC, HSCGP, LLC, John Doe Corporations, whose true names are unknown, jointly and severally, consistent with these allegations, and requests that the Court award him back pay, front pay, actual damages, general damages, compensatory damages, punitive damages and/or liquidated damages, together with pre-judgment interest from the date of Defendants' breach of contract and/or statutory duties to Plaintiff, as well as incidental and consequential costs associated herewith, including attorneys' fees and costs and such other relief as a competent Court would deem appropriate.

**A JURY TRIAL IS RESPECTFULLY REQUESTED AS TO ALL MATTERS TRIABLE INCLUDING ISSUES REGARDING ENFORCEMENT OF AN ARBITRATION AGREEMENT AND/OR FINDINGS REGARDING WHETHER ANY PARTY IS BOUND BY AN ARBITRATION AGREEEMENT.**

Respectfully submitted,

**JAMES MICHAEL ISERNIA, MD**

By:/s/ Thomas E. Strelka. (VSB No. 75488)
L. Leigh R. Strelka, Esq. (VSB No. 73355)
N. Winston West IV, Esq. (VSB No. 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
(540) 283-0802

thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*