CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 18 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES MICHAEL ISERNIA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:22-cv-00022 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANVILLE REGIONAL MEDICAL | ) | By:    Hon. Thomas T. Cullen |
| CENTER, LLC, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

Plaintiff Dr. James Michael Isernia is a physician who has practiced in southwest Virginia for more than two decades. His employment contract with his primary employer—Martinsville Physician Practices, LLC ("MPP")—includes an arbitration provision. In 2021, Dr. Isernia was fired—apparently, for failing to comply with MPP's best practices for opioid prescriptions, despite receiving multiple warnings. Dr. Isernia claims this is a pretext, and that he was actually terminated for complaining internally about the hospital's staffing decisions during the beginning of the COVID-19 pandemic.

Dr. Isernia sued Defendants Danville Regional Medical Center ("DRMC") and HSCGP, LLC ("HSCGP")[1] for defamation, tortious interference, and illegal retaliation. The relationship, if any, between these Defendants and MPP is unclear. The question presented is whether Defendants can take advantage of the arbitration provision in Dr. Isernia's

---

[1] Dr. Isernia's initial complaint also named "John Doe corporations" as Defendants. (Compl. at 1 [ECF No. 1].) The court ordered the parties to identify those defendants and determine their citizenship so the court could confirm its jurisdiction. (ECF Nos. 13, 15.) After discussions with DRMC and HSCGP, Dr. Isernia dismissed the John Doe corporations with prejudice. (*See* ECF Nos. 18, 19.)

employment contract with MPP and force him to arbitrate these claims, even though they are not parties to that employment contract.

Defendants moved to compel arbitration. (ECF No. 5.) For the reasons discussed below, the court will grant this motion.

## I.   BACKGROUND

Dr. Isernia is an internal medicine specialist who has practiced in Martinsville, Virginia, for more than 25 years. (Compl. ¶ 10 [ECF No. 1].) At the time of his firing, he worked for DRMC, which allowed him to practice at MPP as well. (*See id.* ¶¶ 4, 5.)

When the COVID-19 pandemic swept through southwest Virginia in the spring of 2020, DRMC altered its staffing practices. (*Id.* ¶ 15.) This included reassigning staff who worked closely with Dr. Isernia to other duties, like taking the temperatures of arriving patients or assisting other physicians. (*Id.*) Dr. Isernia complained about these reassignments.

That winter, DRMC audited Dr. Isernia's records and issued a "final written warning to Dr. Isernia regarding his prescribing practices, specifically his failure to utilize [DRMC's best practices] for transmitting controlled substance prescriptions." (*Id.* ¶¶ 17, 24.) Dr. Isernia alleges that this audit was retaliatory, and he suggests that DRMC's justification for the audit— that Dr. Isernia wrote more than 400 prescriptions for controlled substances in May 2020 without adopting DRMC's best practices—was merely pretextual. (*Id.* ¶¶ 19, 26.) He believes he was actually fired for complaining about his staff being reassigned. (*Id.* ¶ 16.) And he maintains that "at all times" he kept appropriate records supporting the prescriptions and "treated his patients within state guidelines . . . ." (*Id.* ¶¶ 24–25.)

Yet, Virginia law required DRMC to report Dr. Isernia's written warning to the Virginia's Department of Health Professionals. (*Id.* ¶ 32.) DRMC's April 2021 filing, which is publicly available, prompted the Department to investigate Dr. Isernia's prescribing practices. (ECF No. 1-1.)

In the meantime, DRMC also began a second audit into Dr. Isernia's prescribing practices, concluding that audit while the Department's investigation was pending. (Compl. ¶ 36.) This audit faulted Dr. Isernia for "continued non-compliance with state[-] and practice[-]specific regulations for the management of patients receiving chronic opioid therapy," including by failing "to document reasonable justification for reasons to [prescribe a dosage exceeding] 120 MME/day." (*Id.*) Based on these conclusions, DRMC placed Dr. Isernia on administrative leave on December 21, 2021, and fired him on January 4, 2022. (*Id.* ¶ 37).[2] Two months later, the Department closed its investigation into Dr. Isernia, concluding that his conduct did not warrant disciplinary action. (*See* ECF No. 1-2.)

A Physician Employment Agreement governs Dr. Isernia's employment with MPP. (*See* ECF No. 6-1.) Under that Agreement, "any dispute, breach, or other claim arising out of or related to this Agreement shall be settled by confidential, binding, and final arbitration" conducted "before a single arbitrator and administered by the Alternative Dispute Resolution Service of the American Health Lawyer Association ('AHLA') in accordance with its rules."

[2] Dr. Isernia never explicitly alleges that MPP fired him, although the record suggests that this is what technically happened. Instead, he alleges that DRMC, where he had worked "in various capacities . . . for the past ten years," exercised "supervision and control" over MPP and that DRMC eventually fired him. (*Id.* ¶¶ 5, 11, 37.) By inference, Dr. Isernia's complaint suggests that DRMC and MPP are closely related entities. The nub of Dr. Isernia's tortious interference claim is that DRMC's decision to terminate him caused "the loss of [Dr. Isernia's] position" with MPP. (*Id.* ¶ 55; *see also id.* ¶ 53.) And his concession that he "has not been able to secure other employment since his unlawful termination" by DRMC further suggests that DRMC controlled his practice with MPP—in other words, MPP fired Dr. Isernia when DRMC did. (*See id.* ¶ 63.)

(*Id.* at 10.) AHLA rules give the relevant arbitrator "the power to determine his or her jurisdiction and any issues of arbitrability." (ECF No. 6-2, at 4.)

On April 4, 2022, Dr. Isernia filed a complaint against Defendants. He alleges defamation *per se*, tortious interference with a contract, tortious interference with a business expectancy, and a violation of the Virginia Whistleblower's Protection Act (Va. Code Ann. § 40.1-27.3(A)(1)). (Compl. ¶¶ 10–16.) In response, based on Dr. Isernia's employment agreement with MPP, Defendants moved to compel arbitration. (ECF No. 5.)

## II.    STANDARD OF REVIEW

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (cleaned up). "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* at 500. Thus, the district court ordinarily "engage[s] in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted). "Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013).

### III.   ANALYSIS

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Whether an arbitration provision applies to a particular dispute—and therefore whether that dispute must be resolved by an arbitrator or a court—is a question of arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Arbitrability is a broad term that interchangeably describes both "whether the parties have agreed to arbitrate" and "whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "[P]arties may agree to have an arbitrator decide" these "'gateway' questions of 'arbitrability.'" *Henry Schein*, 139 S. Ct. at 529.

Generally, non-signatories to an arbitration provision—like the Defendants here—have no right to compel arbitration unless some principle of contract law or equity gives them this right. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Defendants assert that two such principles empower them to enforce the arbitration provision between Dr. Isernia and MPP in this suit.[3] Specifically, Defendants claim that they are third-party beneficiaries of Dr. Isernia's employment agreement with MPP, and that Dr. Isernia is equitably estopped from refusing to arbitrate his claims against them. Either theory would allow Defendants to stand in for MPP and enforce the arbitration provision against Dr. Isernia. *See Weckesser v. Knight Enters. S.E., LLC*, 735 F. App'x 816, 821–22 (4th Cir. 2018) (analyzing whether a non-signatory could enforce an arbitration agreement as a third-party beneficiary); *Am. Bankers Ins.*

---

[3] Neither party challenges the validity of the relevant employment agreement or its arbitration provision.

*Grp. v. Long*, 453 F.3d 623, 626–30 & n.3 (4th Cir. 2006) (analyzing whether a non-signatory could enforce an arbitration agreement under a theory of equitable estoppel). Dr. Isernia argues that neither theory is applicable.

Whether non-signatories may enforce an arbitration provision against a signatory is a question of arbitrability. To determine whether the parties have agreed to arbitrate such a question, courts consider the arbitration provision's plain language. Courts will only conclude that the parties intended for arbitrators to resolve arbitrability disputes if that provision "clearly and unmistakably" assigns questions of arbitrability to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). This is hardly an insurmountable bar—at least five circuits have held that arbitration provisions can clearly and unmistakably refer the issue of whether a non-signatory can enforce an arbitration provision against a signatory to arbitrators. *See, e.g.*, *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 713–15 (5th Cir. 2017); *Eckert/Wordell Architects, Inc. v. EJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Contec Corp v. Remote Sol., Co.*, 398 F.3d 205, 209–11 (2d Cir. 2005); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472–74 (1st Cir. 1989).

The operative question, then, is whether the parties clearly and unmistakably committed disputes over arbitrability to arbitration. The court finds that they have done so here because Dr. Isernia's employment contract explicitly incorporates the American Health Lawyers Association's (AHLA) arbitration rules, which clearly and unmistakably commit the resolution of disputes over arbitrability to arbitration.

The explicit incorporation of arbitration rules providing that arbitrators resolve disputes over arbitrability satisfies the clearly-and-unmistakably standard. *See Simply Wireless,*

*Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526–28 (4th Cir. 2017) (holding that an arbitration provision's incorporation of the JAMS Rules clearly and unmistakably assigns disputes over arbitrability to arbitration, and collecting supportive circuit court authority), *abrogated on other grounds*, *Henry Schein*, 139 S. Ct. 524.[4] The incorporation of the AHLA's arbitration rules in Dr. Isernia's employment contract is no exception. Those rules mandate that "any dispute, breach, or other claim arising out of or related to this Agreement" must be resolved by "confidential, binding, and final arbitration . . . administered by the Alternative Dispute Resolution Service of the [AHLA] in accordance with its rules[.]" (ECF No. 6-1, at 10.) That text is clear.

Consider two additional textual cues that support this conclusion. First, the AHLA rules require arbitration proceedings as soon as a party "produces a document that arguably requires arbitration of the claim." (ECF No. 6-2, at 4.) Defendants' assertion that they can enforce the arbitration provision in Dr. Isernia's employment agreement with MPP "arguably requires arbitration of the claim." Second, AHLA rules give the arbitrator "the power to determine his or her jurisdiction and any issues of arbitrability." (ECF No. 6-2, at 4.) As explained above, arbitrability includes disputes over whether signatories must arbitrate against non-signatories. And even if "issues of arbitrability" were limited to questions of whether the agreement covered certain claims, the additional reference to the arbitrator's "power to determine his or her jurisdiction" would confirm that the parties agreed to arbitrate disputes over whether non-signatories could insist on arbitration. *See, e.g.*, *Brittania-U*, 866 F.3d at 714

---

[4] *See also Brittania-U*, 866 F.3d at 713–14 (holding that an arbitration provision's incorporation of the United Nations Commission on International Trade Law Arbitration Rules clearly and unmistakably delegates disputes over arbitrability to arbitration and collecting supportive circuit court authority); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985–86 (9th Cir. 2017) (same as to the International Chamber of Commerce Rules); *Brennan v. Opus Bank*, 796 F.3d 1125, 1129–31 (9th Cir. 2015) (same as to the American Arbitration Association Rules).

(interpreting the reference to "jurisdiction" in the United Nations Commission on International Trade Law Arbitration Rules); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (same in the International Chamber of Commerce Rules); *Contec*, 398 F.3d at 208 (same in the American Arbitration Association Rules).

So it is no surprise that at least three other federal district courts have held that the explicit incorporation of those same rules clearly and unmistakably commits issues of arbitrability to arbitration. *See Williamson v. Grano*, No. 1:18-cv-00432, 2019 WL 211684, at *3–7 (D.N.M. Jan. 16, 2019); *Ambulatory Servs. of P.R., LLC v. Sankar Nephrology Grp., LLC*, No. 4:17-CV-230-A, 2017 WL 1954932, at *3–4 (N.D. Tex. May 9, 2017); *Gerena v. Neurological Surgery, P.C.*, No. CV 15-4634, 2016 WL 3647782, at *3–4 (E.D.N.Y. June 9, 2016).

This court "therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500. The question of whether Dr. Isernia has agreed to arbitrate his claims against Defendants must go to an arbitrator.

That just leaves the court to determine this case's proper disposition. "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Otherwise, the court must stay the lawsuit pending arbitration of "any issue referable to arbitration" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3).

A stay is appropriate here. The arbitrator might decide that the Defendants cannot enforce Dr. Isernia's arbitration provision against him. Alternatively, he or she might decide that some of the claims are not arbitrable. So the court will stay this litigation pending

arbitration because the court may ultimately have to resolve some of Dr. Isernia's claims. *See* 9 U.S.C. § 3; *Nardello v. Boehringer Ingelheim USA Corp.*, No. JKB-15-3792, 2016 WL 5940844, at *5–6 (D. Md. Oct. 13, 2016).

## IV.   CONCLUSION

Defendants' motion to compel arbitration (ECF No. 5) will be granted and proceedings will be stayed pending the resolution of that arbitration.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 18th day of July, 2022.

/s/ *Thomas T. Cullen*
_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE