CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 06 2022

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JAMES MICHAEL ISERNIA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:22-cv-00022 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANVILLE REGIONAL MEDICAL | ) | By:   Hon. Thomas T. Cullen |
| CENTER, LLC, *et al.*, | ) |          United States District Judge |
| | ) | |
| Defendants. | ) | |

This case is before the court on Plaintiff Dr. James Michael Isernia's Rule 54(b) motion for reconsideration. (ECF No. 26.) A district court's interlocutory "order or other decision" "may be revised at any time before entry of a judgment" to correct a "clear error causing manifest injustice." *See* Fed. R. Civ. P. 54(b); *U.S. Tobacco Coop. v. Big S. Wholesale of Va., LLC.*, 899 F.3d 236, 257 (4th Cir. 2018). For the reasons explained below, the court will deny the motion.

I.

Dr. Isernia practiced medicine with Martinsville Physician Practices, LLC ("MPP"). (*See* Compl. ¶ 5 [ECF No. 1].) He and MPP entered a written employment agreement with each other, and this agreement included an arbitration provision. (*See* ECF No. 6-1, at 10.) Specifically, Dr. Isernia agreed to arbitrate "any dispute, breach, or other claim arising out of or related to this Agreement" "in accordance with [the American Health Lawyers Association's ("AHLA")] rules." (*Id.*)

In addition to MPP, Dr. Isernia also practiced with Defendant Danville Regional Medical Center ("DRMC"). DRMC eventually fired Dr. Isernia, and the parties dispute why. Dr. Isernia alleges that DRMC fired him for complaining about staffing decisions. (Compl. ¶¶ 15–16.) DRMC claims it fired Dr. Isernia for violating its rules about prescribing opioids. (Defs.' Mem. Supp. Mot. Dismiss and Compel Arbitration at 2 n.4 [ECF No. 6].)

In response to his termination, Dr. Isernia sued DRMC (and another healthcare entity, Defendant HSCGP, LLC ("HSCGP")) for defamation per se, tortious interference, and retaliatory discharge in violation of Virginia Code § 40.1-27.3. (Compl. ¶¶ 39–79.) Those companies have moved to compel arbitration on these matters under Dr. Isernia's arbitration provision with MPP. (*See* ECF No. 5.) The question before the court is whether Dr. Isernia's arbitration provision requires an arbitrator to decide whether the defendants—neither of which is a party to that agreement—can enforce it against Dr. Isernia.

The court has already addressed this issue once. (*See* ECF No. 23 ("First Mem. Op.").) It reasoned that parties can contract to have arbitrators decide certain issues, including issues of arbitrability, so long as they do so clearly and unmistakably. (*Id.* at 5–7 & n.4.) Dr. Isernia's arbitration provision clearly and unmistakably delegates issues of arbitrability to an arbitrator through its incorporation of the AHLA rules. (*Id.* at 6–8.) And the Supreme Court has implied that whether any of the parties have agreed to arbitrate any issues is a question of arbitrability. (*Id.* at 5 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010)).)

The court held that Dr. Isernia's arbitration provision delegated the issue of whether the non-signatory defendants could enforce Dr. Isernia's arbitration provision with MPP against him to an arbitrator. (*Id.* at 6–8.) Out-of-circuit precedent and the plain language of

Dr. Isernia's arbitration provision informed the court's conclusion. The AHLA's arbitration rules initiate arbitration once the party seeking arbitration "produces a document that arguably requires arbitration of the claim." (*Id.* at 7 (citing ECF No. 6-2, at 4).) At that time, the arbitrator is empowered "to determine his or her jurisdiction and any issues of arbitrability." (*Id.* (citing ECF No. 6-2, at 4).) The non-signatory defendants in this case had produced Dr. Isernia's arbitration provision, which arguably required him to arbitrate his claims against them, and accordingly empowered a relevant arbitrator to resolve any issues of jurisdiction or arbitrability. (*Id.* at 6–8.) Several circuit courts analyzing similar language routinely allow non-signatories to enforce arbitration provisions against signatories. (*Id.* at 5–6 (collecting cases).)

Dr. Isernia has moved the court to reconsider this ruling. His briefing advances three specific arguments. First, he argues that courts, and not arbitrators, must make threshold determinations confirming a "sufficient relationship" between a signatory and a non-signatory before recognizing the non-signatory's ability to enforce an arbitration provision. (ECF No. 27, at 9–12 (citing *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205 (2d Cir. 2005).) This court did not do so. Second, Isernia contends that non-signatories can never clearly and unmistakably agree to arbitrate issues of arbitrability because they did not sign the relevant contracts. (*Id.* at 6–8, 12–16.) Neither DRMC nor HSCGP is a party to Dr. Isernia's employment contract. And third, he claims that the cases cited by the court in its first Mem. Op. are distinguishable on the facts. (*See generally* ECF No. 30.)

Having reviewed the Federal Arbitration Act ("FAA"), the Supreme Court's precedents interpreting the same, and the caselaw considering the issue here for a second time, the court will deny Dr. Isernia's motion.

II.

The court begins with some background on the FAA. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

FAA cases generally involve one document that houses two separate contracts. The arbitration provision[1] is independent of and severable from the contact in which it sits. *See* 9 U.S.C. § 2 (conceiving of an arbitration provision as "[a] written provision *in . . . a contract . . . to settle by arbitration a controversy*") (emphasis added); *Jackson*, 561 U.S. at 67.

Arbitration provisions typically state which disputes the parties have agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). Presumptively, whether the arbitration provision at issue covers a particular dispute (in other words, whether a particular dispute is arbitrable) is a question of arbitrability and for the presiding court. *See id.*

However, within their arbitration provisions, parties can further agree to "delegate" issues of arbitrability to arbitrators. These "delegation provision[s]" are "agreement[s] to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Jackson*, 561 U.S. at 68–69. A delegation provision must be clear and unmistakable. *First Options*, 514 U.S. at 944–45. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Jackson*, 561 U.S. at 70. At least

---

[1] Arbitration provisions are often referred to as "agreements to arbitrate." *See Jackson*, 561 U.S. at 68–70.

in the context of "whether their agreement covers a particular controversy," courts must enforce these provisions even if the court thinks that the argument made by the party seeking arbitration is "wholly groundless." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* at 529.

Whether a particular delegation clause satisfies the clear-and-unmistakable standard is a question of federal law. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ([subject to the clear-and-unmistakable standard]) should apply ordinary state-law principles that govern the formation of contract." *See First Options*, 514 U.S. at 944–45; *see also id.* (describing the clear-and-unmistakable standard as a "qualification" to this general rule); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846–47 (6th Cir. 2020). Otherwise, federal courts apply state-law principles to arbitration provisions. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643–44 (2020) (interpreting 9 U.S.C. § 2). Specifically, "[t]he 'traditional principles of state law' that apply under [the FAA] include doctrines that authorize the enforcement of a contract by a nonsignatory." *Id.* (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). State contract law governs arbitration provisions unless the parties have explicitly abrogated those principles. *Cf. id.* at 1645 (reasoning that a treaty did not displace state law principles otherwise applicable under the FAA because the treaty was silent on the issue). In short, federal law controls whether a judge or an arbitrator decides the contested issue, but state law controls the relevant analysis.

The FAA gives contracting parties wide latitude in committing both the merits of their disputes and the arbitrability of certain issues to arbitration. The Supreme Court only requires that they do so clearly and unmistakably. *See First Options*, 514 U.S. at 942–45. Incorporating by reference arbitration rules that refer certain disputes to arbitration satisfies this standard. *Cf. Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526–28 (4th Cir. 2017) (couching this holding "in the context of a commercial contract between sophisticated parties") *abrogated on other grounds*, *Henry Schein*, 139 S. Ct. 524. (*See also* First Mem. Op. at 6–7 & n.4 (collecting cases from other circuits, many of which affirm this proposition without the Fourth Circuit's qualification).)

A litigant resisting arbitration must decide whether to challenge the relevant contract as a whole, the relevant delegation provision in particular, or both. *Jackson*, 561 U.S. at 70; *Hengle v. Treppa*, 19 F. 4th 324, 335–44 (4th Cir. 2021) (separately analyzing, and then invalidating, both a delegation provision and the entire contract under the "prospective waiver" doctrine). Arbitration provisions and contracts containing arbitration provisions are independently susceptible to state-law contract defenses such as fraud or unconscionability. *See Jackson*, 561 U.S. at 67–68 (2010); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 336–40 (4th 2020). A challenge to the broader contract can be delegated to an arbitrator. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967) (formation); *cf. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447–49 (2006) (enforceability). A challenge to a delegation provision cannot. *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 257–58 (4th Cir. 2021) (formation); *Hengle*, 19 F.4th at 335, 338–42 (enforceability).

III.

Next, it is helpful to frame this case within the universe of disputes that arise in FAA cases. Dr. Isernia's employment contract includes an arbitration provision with a delegation clause. (*Compare* ECF No. 6-1 (employment contract), *with id.* at 10 (arbitration provision and delegation clause).) He is not making any challenge to his employment contract or the operative delegation provision. Quite precisely, Dr. Isernia is asserting that a court, rather than an AHLA arbitrator, must decide whether the non-signatory defendants can enforce his arbitration provision with MPP against him either as third-party beneficiaries or under a theory of equitable estoppel. For substantially the same reasons the court explained in its earlier memorandum opinion, Dr. Isernia is incorrect.

If Dr. Isernia's arbitration provision clearly and unmistakably delegates disputes over attempts by non-signatories to enforce the arbitration provision against him to arbitrators, then this court must honor that choice. *See Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue.").

Dr. Isernia's arbitration provision plainly incorporates the AHLA rules by reference. (*See* ECF No. 6-1, at 10 ("[A]ny dispute, breach, or other claim arising out of or related to this Agreement shall be settled by confidential, binding, and final arbitration . . . before a single arbitrator and administered by the Alternative Dispute Resolution Service of the [AHLA] in accordance with its rules.")); *see also* 11 *Williston on Contracts* § 30:25 (4th ed.) (explaining the doctrine of incorporation by reference). This is a clear and unmistakable delegation to arbitration of whatever issues the AHLA rules assign to arbitrators. *Cf. Simply Wireless*, 877

F.3d at 526–28; *Blanton*, 962 F.3d at 846 (asserting that twelve of the federal circuit courts of appeal have adopted this rule, but not distinguishing between opinions like the Fourth Circuit's that only do so in select contexts). Those rules assign all questions of "jurisdiction" and "arbitrability" to the arbitrators. (*See* ECF No. 6-2, at 4 ("[T]he arbitrator . . . shall have the power to determine his or her jurisdiction and any issues of arbitrability.").)

Arbitrability, most commonly, concerns whether a particular arbitration agreement covers a particular legal claim. *See First Options*, 514 U.S. at 943 (referring to "the arbitrability of the dispute" as "whether [the parties] agreed to arbitrate the merits"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (arbitrability includes "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy"); *cf. Henry Schein*, 139 S. Ct. at 529 (referring to "gateway questions of arbitrability, such as . . . whether [the parties'] agreement covers a particular controversy.")

Less commonly, though, arbitrability also captures "questions of" "whether the parties have agreed to arbitrate." *Id.* (quoting *Jackson*, 561 U.S. at 68–69); *see also Howsam*, 537 U.S. at 84 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability[.]") (internal quotation marks omitted). For its part, the Sixth Circuit distinguishes between "coverage" challenges and "enforcement" challenges to differentiate these two different forms of arbitrability. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022). This court finds that distinction persuasive and endorses it.

With this useful distinction in mind, the court submits that references to "jurisdiction" in common arbitral rules are intended to cover enforcement challenges. For starters, courts interpreting legal documents strive to give each term independent legal meaning. *See Johnson v.*

*Am. United life Ins. Co.*, 716 F.3d 813, 819–20 (4th Cir. 2013) (applying the rule to contracts); *see also Nielsen v. Preap*, 139 S. Ct. 954, 969–70 (2019) (statutes). So jurisdiction must mean something different from arbitrability in the AHLA rules.

Second, the American Arbitration Association ("AAA"), Judicial Arbitration and Mediation Services ("JAMS"), and International Chamber of Commerce ("ICC") rules[2] all use the term jurisdiction in a way that is capable of bearing this meaning.[3] Third, interpreting the AHLA's reference to jurisdiction in this manner maps a distinction already recognized by the Supreme Court and Sixth Circuit onto a distinction widely adopted in other more common arbitral rules.

To recap, a party bringing a coverage challenge is disputing whether the relevant arbitration agreement covers a particular merits issue, and these challenges must be referred to an arbitrator for resolution if the parties have clearly and unmistakably delegated issues of arbitrability to an arbitrator. Likewise, a party bringing an enforcement challenge is disputing

---

[2]  Arbitral rules are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Simon J. Burchett Photography v. Maersk Line Ltd.*, No. 20-CV-3288, 2020 WL 8261580, at *6 n.11 (S.D.N.Y. Dec. 30, 2020) (judicially noticing JAMS rules and collecting cases); *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *10 n.6 (E.D.N.Y. July 3, 2014) (judicially noticing AAA rules and collecting cases). The text cited can be found at the following locations: Commercial Arbitration Rules and Mediation Procedures, America Arbitration Association, https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf ("AAA Rules"); JAMS Comprehensive Arbitration Rules & Procedures, JAMS, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf ("JAMS Rules"); ICC Rules of Arbitration, International Chamber of Commerce, https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/#top ("ICC Rules").

[3]  (*See* AAA Rules ("jurisdiction" encompasses "any objections with respect to the existence, scope, or validity of the arbitration agreement" and set off as a distinct concept from "arbitrability of any claim or counterclaim"); JAMS Rules ("jurisdiction" and "arbitrability" together cover "disputes over the formation, existence, validity, interpretation[,] or scope of the agreement under which arbitration is sought, and who are proper Parties to the Arbitration"); ICC Rules (omitting any reference to arbitrability and committing "any question of jurisdiction" including any "plea[] concerning the existence, validity[,] or scope of the arbitration agreement" to "the arbitral tribunal").)

whether the parties have agreed to arbitrate any controversies with each other, and these challenges must be referred to an arbitrator for resolution if the parties have clearly and unmistakably delegated issues of jurisdiction to an arbitrator.

An arbitrator's jurisdiction, then, is commonly understood to reach questions of an arbitration provision's applicability to a particular dispute, including disputes over "whether the parties are bound by a given arbitration clause." *Howsam*, 537 U.S. at 84. Therefore, an arbitrator, rather than this court, must decide whether DRMC and HSCGP can enforce Dr. Isernia's arbitration provision against him under either a theory of equitable estoppel or as third-party beneficiaries.

The Sixth Circuit, Tenth Circuit, and Eighth Circuit have explicitly reached the same conclusion. In *Becker*, an electrical inspector who worked for a subcontractor sued the energy company retaining his employer for wage-and-hour violations under the Fair Labor Standards Act. 39 F.4th at 353–54. He and the subcontractor had agreed to arbitrate "any dispute, controversy[,] or claim arising out of or related to in any way to this employment relationship." *Id.* at 354 (internal quotation marks omitted and alteration added). The subcontractor moved to intervene, and both the subcontractor and the energy company moved to compel arbitration of the electrical inspector's claims. *Id.* The district court denied the motion, adopting the electrical worker's argument "that the arbitration agreement formed with [the subcontractor] does not constitute the formation of an arbitration agreement with [the energy company]." *See id.* at 355. It then determined that equitable estoppel did not empower the energy company to enforce the arbitration agreement between the electrical worker and the subcontractor. *See id.* at 356.

The Sixth Circuit reversed. "The practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge." *Id.* at 355. This rule applies to both coverage challenges and enforcement challenges. *Id.* To be sure, courts must resolve challenges to a delegation provision's validity because these challenges implicate "an arbitrator's authority to arbitrate arbitrability" in the first place. *Id.* But, in the presence of a valid delegation provision, gateway questions of arbitrability are for arbitrators. *See id.*

In *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, a decedent's estate attempted to sue her nursing home for wrongful death in state court. No. 21-2037, 2022 WL 839800, at *1 (10th Cir. Mar. 22, 2022). Before her death, the decedent's daughter had signed an arbitration agreement with the nursing home. *Id.* The arbitration agreement contained a delegation clause that incorporated the JAMS rules. *Id.* The district court denied the nursing home's motion to compel arbitration, reasoning that it had not "met its burden of showing an agency relationship existed between" the decedent and her daughter. *Id.* at *3.

The Tenth Circuit reversed. "Once the district court [concluded that there was an arbitration agreement between the nursing home and the daughter that contained an enforceable delegation clause], it should have sent the case to arbitration." *Id.* at *5. Specifically, "[t]he district court erred in . . . *proceeding to address the third-party beneficiary issue.*" *Id.* (emphasis added). In other words, "[b]ecause there is no issue of contract formation, only contract enforcement, the gateway issue of arbitrability must be submitted to the arbitrator consistent with the delegation provisions in the Arbitration Agreement." *Id. See also Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC,* 756 F.3d 1098, 1100 (8th Cir. 2014)

(holding that "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability" and therefore to be resolved by an arbitrator if "there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator").

More recently, three judges on the Fifth Circuit dissented from denial of rehearing en banc on this issue. Judge Edith Jones (writing for herself, Judge Jerry Smith, and Judge Kyle Duncan) faulted the original panel for mistakenly conflating the issue of whether an arbitration agreement has been formed with the issue of that agreement's "enforceability between the parties" "i.e. whether a non-signatory can enforce an arbitration agreement." *Newman v. Plains All Am. Pipeline, L.P.*, --- F.4th ---, 2022 WL 3224559, at *2 (5th Cir. Aug. 5, 2022) (Jones, J., dissenting). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* (quoting *Henry Schein*, 139 S. Ct. at 530). And so the original panel erred when, in analyzing an arbitration agreement with a valid delegation clause, it resolved the issue of whether a non-signatory defendant could enforce the delegation clause against a signatory plaintiff under an estoppel theory. *See id.* at *4.[4]

---

[4] The original panel reasoned that whether an arbitration provision had been formed between the party moving to compel arbitration and the party resisting arbitration was a question that a court, not an arbitrator, must resolve. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398–400 (5th Cir. 2022). It favorably cited *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205 (2d Cir. 2005), a Second Circuit case that required non-signatories to show a sufficient relationship with the actual signatories before the court would allow them to compel arbitration under the relevant arbitration provision. *Id.* at 399–400. And it reasoned that the Supreme Court's decision in *Arthur Andersen* committed the applicability of state-law third-party-enforcement doctrines to the court's review. *Id.* at 401, 406.

Ultimately, though, the court finds neither of these justifications convincing. In these non-signatory cases, the signatory has formed an arbitration provision with another party. The operative question is not whether the signatory has formed an arbitration provision with the moving non-signatory. It is whether the moving non-signatory has some other legal right to enforce the arbitration provision to which the signatory is a party. If the Fifth Circuit panel had concluded that the moving non-signatory was a third-party beneficiary to

In addition to the Sixth, Eighth, and Tenth Circuits, various district courts have explicitly held that arbitrators, not courts, must decide whether non-signatories are entitled to enforce valid arbitration provisions against signatory plaintiffs.[5]

the operative arbitration provision, it would not necessarily follow that the moving non-signatory and the plaintiff had ever formed an arbitration provision between themselves. Instead, the panel would have been recognizing the moving non-signatory's right to enforce an arbitration provision to which it was undisputedly not a party. And in this posture, signatories who have agreed to do so must arbitrate enforcement questions that their arbitration provision delegates to arbitrators. *Newman*, --- F.4th ---, 2022 WL 3224559, at *2–4 (Jones, J., dissenting); *see Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) (applying this principle).

For similar reasons, the Fifth Circuit never overread *Arthur Andersen*. That case has nothing to say about arbitrability; the word appears only once, in an oblique footnote referencing the Supreme Court's admonition that "questions of arbitrability be addressed with a healthy regard for the federal policy favoring arbitration." *Arthur Andersen*, 556 U.S. at 630 n.5 (cleaned up). *Arthur Andersen*'s core holding is that state contract law, including doctrines regarding third-party enforceability, applies to arbitration provisions the same way that it applies to other contracts. *Id.* at 629–32. It makes no judgment about whether a court or an arbitrator must apply the relevant state law governing questions of third-party enforcement. *See id.* at 631. (This court's skepticism regarding favorable citations to *Contec*'s "sufficient relationship" test is discussed in the main text and will not be repeated here.) *Cf. Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120 n.7 (11th Cir. 2020) (expressing doubt that a non-signatory could ever successfully move to compel a signatory to arbitrate with them under a third-party-enforcement doctrine).

[5] *Ford-Allemand v. Piedmont Nat. Gas Co., Inc.*, No. 1:20-cv-00192, 2022 WL 3576227, at *1–3 (S.D. Ohio Aug. 19, 2022) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory); *Bossart v. Gen. Motors LLC*, No. 20-CV-11057, 2022 WL 3573855, at *1–4 (E.D. Mich. Aug. 19, 2022) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory); *Cunningham v. Ford Motor Co.*, No. 21-cv-10781, 2022 WL 2819115, at *2–4 (E.D. Mich. July 19, 2022) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory); *Williams v. Staffmark Inv. LLC*, No. 21-cv-2456, 2022 WL 910859, at *2–4 (D. Kan. Mar. 29, 2022) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory as a third-party beneficiary); *Henry v. Vantage Credit Union*, No. 4:20-cv-01865, 021 WL 2187908, at *6–7 (E.D. Mo. May 28, 2021) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory); *Grabowski v. Platepass, L.L.C.*, No. 20 C 7003, 2021 WL 1962379, at *2–4 (N.D. Ill. May 17, 2021) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory as a third-party beneficiary); *In re Intuniv Antitrust Litig.*, No. 1:16-cv-12653, 2021 WL 517386, at *3–8 (D. Mass. Feb. 11, 2021) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory under an equitable-estoppel theory); *Symonds v. Credico (USA) LLC*, No. 1:20-cv-10192, 2020 WL 7075028, at *4–6 (D. Mass. Dec. 3, 2020) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory either as a third-party beneficiary or under an equitable-estoppel theory); *Robertson v. Enbridge (U.S.) Inc.*, No. 19-1080, 2020 WL 9211171, at *2–4 & n.3 (W.D. Pa. Aug. 4, 2020) (arbitrator was required to decide whether defendant non-signatories could enforce arbitration provision against plaintiff signatory under an equitable-estoppel theory) (R. & R.); *Turner v. PillPack, Inc.*, No. 5:18-CV-66, 2019 WL 2314673, at *3–6 (W.D. Ky. May 30, 2019) (pending a threshold determination that the plaintiff signatory assented to the relevant arbitration provision, arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory either as a third-party beneficiary or "under an estoppel theory"); *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 794–97 (S.D. Ohio 2019) (arbitrator was required to decide whether defendant non-

IV.

This brings the court to Dr. Isernia's arguments. *First*, Dr. Isernia argues that this court erred in the First Mem. Op. by compelling arbitration without first ensuring there was a "sufficient relationship" between the parties. Dr. Isernia's sufficient-relationship test comes from a Second Circuit case. In *Contec*, the court laid out a test for whether a non-party was entitled to enforce an arbitration provision against a signatory. "In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the right created under the agreement." *Contec*, 398 F.3d at 209. Factors weighing on whether a sufficient relationship existed between the relevant parties were whether they had signed the relevant contract or other contracts, the issue to be arbitrated, and their own relationship. *Id.*

As an initial matter, *Contec* does not bind this court. In any event, this portion of the opinion lacks persuasive force. The Supreme Court has reiterated twice that courts may not decline to send issue to arbitrators based on their view of their merits. "A court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" *Henry Schein*, 139 S. Ct. at 529 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649–50 (1986)). This "principle applies with equal force to the threshold issue of arbitrability. Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question

---

signatory could enforce arbitration provision against plaintiff signatory); *Jacobsen Gravel Co. v. IronPlanet, Inc.*, No. 16-2619, 2016 WL 10879837, at *1–3 (D. Minn. Nov. 10, 2016) (arbitrator was required to decide whether defendant non-signatory could enforce arbitration provision against plaintiff signatory); *Visibility Corp. v. Schilling Robotics, LLC*, No. 10-12280, 2011 WL 5075816, at *1, 3–5 (D. Mass. Oct. 25, 2011) (arbitrator was required to decide whether defendant non-signatories could enforce arbitration provision against plaintiff signatory under an assignment theory).

that the parties have delegated to an arbitrator." *Id.* at 529–30. If arbitrators are entitled to resolve even "wholly-groundless" disputes over an arbitration provision's coverage, it follows that they are similarly entitled to resolve all disputes regarding an arbitration provision's enforceability. "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Id.* at 529.

One virtue of the sufficient-relationship test, according to Dr. Isernia, is that it avoids the absurd result of allowing *anybody* that the signatory might later sue to attempt to enforce the arbitration provision against him. (*See* ECF No. 27, at 9–12); *see also Blanton*, 962 F.3d at 851–52 (addressing and dismissing a similar argument). But the Supreme Court has addressed, and seemingly rejected, this hypothetical concern. It reasoned that "frivolous arguments" about an arbitration provision's coverage would be resolved quickly, and parties acting in bad faith could face sanctions imposed by the arbitrators. *Henry Schein*, 139 S. Ct. at 531; *see also* AAA Rules (making "appropriate sanctions" available); JAMS Rules (making cost-shifting and fee-shifting sanctions available). And it is not clear why a wholly groundless dispute about an arbitration provision's enforceability is less appropriate for arbitration than a wholly groundless dispute about an arbitration provision's coverage.

In short, *Contec*'s sufficient-relationship test appears intended to weed out wholly groundless challenges to an arbitration provision's enforceability. But this reasoning was abrogated by implication in *Henry Schein*. To reach this conclusion, the Supreme Court recognized that parties forced to arbitrate frivolous arbitrability disputes could seek sanctions against the other side. In any event, *Contec*'s sufficient-relationship test, like the wholly groundless exception the Supreme Court abrogated in *Henry Schein*, "is inconsistent with the

[FAA's] text," and Dr. Isernia's policy concerns cannot compel the court to amend the statute.[6]

*Second*, Dr. Isernia argues that non-signatories can never clearly and unmistakably consent to arbitration provisions. "Just because a signatory has agreed to arbitrate issue of arbitrability with another party does not mean that it must arbitrate with any non-signatory." *Contec*, 398 F.3d at 209. Accordingly, enforcement issues involving non-signatories are never properly sent to arbitration because the parties involved have not formed any arbitration provision with each other, let alone one that clearly and unmistakably delegates enforcement issues to arbitration.

Again, Dr. Isernia's premise mistakes formation with enforceability. Two facts are undisputed. First, Dr. Isernia formed an arbitration provision with MPP. (*See* ECF No. 6-1, at 10.) Second, Dr. Isernia has not formed an arbitration provision with either DRMC or HSCGP. But it does not follow that the enforcement of an arbitration provision is limited to the parties to that arbitration provision. Like any other contract, third parties may enforce an arbitration provision in appropriate circumstances. *Arthur Andersen*, 556 U.S. at 629–31. If Dr.

---

[6] The court would be remiss if it failed to acknowledge that many district courts from outside the Second Circuit have adopted Dr. Isernia's position and treated *Contec* as controlling, or otherwise concluded that a court must resolve third-party enforcement issues itself. *See, e.g.*, *Rogers v. Tug Hill Operating, LLC*, --- F. Supp. 3d ---, 2022 WL 1096620, at *14–16 (N.D. W. Va. Apr. 12, 2022); *BAM Navigation, LLC v. Wells Fargo & Co.*, No. 20-cv-1345, 2021 WL 533692, at *5–6 (D. Minn. Feb. 12, 2021); *Nipro Corp. v. Verner*, No. 19-62121, 2021 WL 8894430, at *17 (S.D. Fla. June 24, 2021); *Staley v. Gilead Scis., Inc.*, Nos. 19-cv-02573, 20-cv-06961, 06793, 2021 WL 4972628, at *1–5 (N.D. Cal. Mar 12, 2021); *Cotto v. TJ Sutton Enters., LLC*, No. 2021-16, 2021 WL 3045551, at *5–6 (D.V.I. July 19, 2021); *Altenhofen v. S. Star Cent. Pipeline, Inc.*, No. 4:20CV-00030, 2020 WL 6877575, at *2–8 (W.D. Ky. Nov. 23, 2020); *Fielder v. Lee Staffing, Inc.*, No. 2:19cv186, 2019 WL 6359149, at *1–3 (Nov. 27, 2019); *In re Paragon Offshore PLC*, 588 B.R. 735, 751–57 (Bankr. D. Del. 2018); *Adams v. John M. O'Quinn & Assocs., PLLC*, No. 4:16-cv-00071, 2017 WL 1091879, at *5–13 (N.D. Miss. Mar. 22, 2017); *Boehm v. Getty Images (US), Inc.*, No. 16-cv-311, 2016 WL 6110058, at *2–4 (W.D. Wis. Oct 19, 2016); *Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, No. 14-6113, 2015 WL 2403129, at *2–6 (D.N.J. May 20, 2015); *Rivera v. L-3 Commc'ns Corp.*, 8:09-cv-02447, 2010 WL 11629096, at *1–2 (M.D. Fla. May 24, 2010).

Isernia has clearly and unmistakably delegated the resolution of these third-party enforcement questions to an arbitrator, then the court must respect this choice. *See Henry Schein*, 139 S. Ct. at 529.

The operative question here is whether a court or an arbitrator must decide these third-party enforcement questions in Dr. Isernia's case. His arbitration provision with MPP explicitly incorporates that AHLA rules, which in turn refer questions of "arbitrability" and "jurisdiction" to an arbitrator, and this incorporation clearly and unmistakably delegates issues of third-party enforcement to arbitration.

None of Dr. Isernia's proposed authority overcomes this reasoning. When disputes over arbitrability involve a signatory and a non-signatory, which party is moving to compel arbitration is determinative. Here, for reasons explained elsewhere in this memorandum opinion, where the non-signatory is the moving party, the signatory is bound by his arbitration provision's clear-and-unmakeable delegation of arbitrability issues, and an arbitrator must resolve the third-party enforcement issues.

But "[w]hile issues of arbitrability with respect to non-signatories seeking to compel arbitration may be delegated to an arbitrator, the issue of whether a non-signatory may be compelled to arbitrate is for the [c]ourt to decide." *See Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020). A signatory cannot enforce his own arbitration provision against a non-signatory because the non-signatory has not formed an arbitration provision with any party (let alone an arbitration provision that makes a clear-and-unmistakable delegation of third-party enforcement issues to an arbitrator).[7] So, although

---

[7] *See, e.g., Parrella v. Orange Rabbit, Inc.*, No. 20-CV-9923, 2021 WL 4462809, at *8–9 (S.D.N.Y. Sept. 29, 2021);

these cases support Dr. Isernia's argument that non-signatories cannot clearly and unmistakably delegate the resolution of third-party enforcement issues to arbitration, they are inapplicable to these facts. Dr. Isernia is party to an arbitration provision that clearly and unmistakably delegates third-party enforcement issues to an arbitrator, and caselaw declining to enforce arbitration provisions against non-signatories is thus factually distinguishable.

Those principles, however, do not leave Dr. Isernia without support. He has identified several cases in which the court has declined to allow non-signatory defendants to compel signatory plaintiffs to arbitrate issues of third-party enforcement.[8] These cases are on point. They are, however, unconvincing for all the reasons explained elsewhere in this memorandum opinion.

*Third*, Dr. Isernia argues that his case is factually distinguishable from every case cited in the First Mem. Op. Even if this is true, the court observes that all of the cases cited in footnote 5 are factually indistinguishable from this matter in all of the relevant ways.

None of Dr. Isernia's fresh arguments persuades.

## V.

Dr. Isernia's position also fails to address three of the court's lingering concerns. *First*, as shown above, institutional providers of arbitration services routinely commit issues of both "arbitrability" and "jurisdiction" to their arbitrators. Courts read documents with an eye

---

*Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 506 F. Supp. 3d 1256, 1265–68 (S.D. Fla. 2020); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys., LLC*, 289 F. Supp. 3d 457, 465–67 (S.D.N.Y. 2018); *Oehma, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Ltd.*, 902 F. Supp. 2d 87, 95–97 (D.D.C. 2012).

[8] *See, e.g.*, *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580, 2021 WL 979726, at *5–8 (D.N.M. Mar. 16, 2021); *Kennedy v. Pioneer Nat. Res. Co.*, No. 20-CV-00086, at *2–3 (W.D. Tex. Dec. 28, 2020); *GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*, No. 19-1932, 2020 WL 4287358, at *4–8 (D. Del. July 27, 2020); *In re Paragon Offshore PLC*, 588 B.R. 735, 751–57 (Bankr. D. Del. 2018).

towards giving every word independent meaning. So, when arbitral rules refer to both arbitrability and jurisdiction, what types of questions implicate an arbitrator's jurisdiction such that they must be resolved by the arbitrator? Dr. Isernia does not say, and the court has already explained its reasoning on this issue.

*Second*, Dr. Isernia chides this court for declining to apply *Contec*'s sufficient-relationship test. But he never points to any place in the FAA's text or the Supreme Court's precedents where that requirement appears.

This failure is fatal. The Supreme Court has reiterated twice that a court may not decline to send issues to arbitrators based on its view of their merits. *See Henry Schein*, 139 S. Ct. at 529–30 (coverage issues); *AT & T*, 475 U.S. at 649–50 (merits issues). What is true for merits issues and coverage issues is also likely true for enforcement issues. *See, e.g.*, *Becker*, 39 F.4th at 355–56; *Eckert/Wordell*, 756 F.3d at 1100; *Casa Arena Blanca*, 2022 WL 839800, at *4–5.

*Third*, Dr. Isernia's position would force the court to graft additional terms abrogating common law contract principles onto the parties' arbitration provision. Substantive state law governs an arbitration provision's interpretation. *See* 9 U.S.C. § 2; *GE Energy Power*, 140 S. Ct. at 1643–45. Indeed, courts frequently recognize and enforce text in arbitration provisions that limits the provision's scope to the signatories and explicitly listed non-signatories.[9] But where,

---

[9] *See, e.g.*, *Doe v. Trump Corp.*, 6 F.4th 400, 411 n.7 (2d Cir. 2021) ("Where, as here, the arbitration clause is limited to the signatory parties and the agreement states that it is intended exclusively to govern the rights of the signatory parties, the language of the contract evinces the parties' intent to arbitrate arbitrability with the signatories and no one else."); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Here, the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. For example, [the relevant] arbitration clause states that '[e]ither you or we may choose to have any dispute between you and us decided by arbitration.' The language of the contracts thus evinces Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else."); *Burnette v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332, 2022 WL 2820112, at *6 (W.D. Mo. July 19, 2022) ("The parties to the [relevant arbitration provision] agreed that arbitration should

like here, such a limitation is absent, the default rule is that certain non-parties can enforce the provision. *See Arthur Andersen*, 556 U.S. at 629–31. And where the signatories have delegated the resolution of such an enforcement issue to an arbitrator, a court cannot resolve them. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. The court will not write a party limitation—which Dr. Isernia could have bargained for—into the arbitration provision.

## VI.

And so the court stands behind its original memorandum opinion. Though forceful, Dr. Isernia's motion for reconsideration ultimately fails to persuade. Whatever error the court may have committed, it is not "clear error." Accordingly, Dr. Isernia's motion for reconsideration (ECF No. 26) will be denied.

## VII.

None of this is to say that the issue before the court is easy. As Dr. Isernia has explained, there is conflicting authority—including from circuit courts—that supports his position. Accordingly, this court will certify the controlling question of law here for the Fourth Circuit's review pursuant to 28 U.S.C. § 1292(b). *See* 9 U.S.C. § 16(b); *In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136–37 (4th Cir. 1997).

---

be administered pursuant to the AAA Rules only when the dispute or claim is 'between the parties[.]'"); *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032, at *7–8 (N.D. Cal. June 24, 2021); *Schulz v. BMW of N. Am., LLC*, 472 F. Supp. 3d 632, 638–39 (N.D. Cal. 2020). *See also Page v. N.A.R. Inc.*, No. 18-cv-2200, 2019 WL 1370146, at *5 n.4 (D.N.J. Mar. 26, 2019) (arbitration provision expressly clarified "that 'disputes about the validity, enforceability, coverage or scope' of the arbitration provision are 'for a court and not an arbitrator to decide'").

This case presents the following question: Whether a non-signatory to an arbitration provision that clearly and unmistakably incorporates arbitral rules delegating questions of "arbitrability" and "jurisdiction" to an arbitrator can move to compel arbitration of a third-party enforcement issue such that an arbitrator—and not a court—determines whether the non-signatory is entitled to enforce the arbitration provision against the signatory.

This question is appropriate for certification. "[A] district court may certify a non-final order for interlocutory appeal when the court finds that the order sought for appeal involves (1) a controlling question of law (2) about which there is substantial ground for difference of opinion and (3) an immediate appeal therefrom may materially advance the termination of the litigation." *Commonwealth of Virginia v. Countrywide Sec. Corp.*, No. 3:14cv706, 2015 WL 3540473, at *3 (E.D. Va. June 3, 2015). First, the question certified is a question of law—"the court of appeals could decide [it] quickly and cleanly without having to study the record." *Ohio Valley Env't Coal., Inc. v. Maple Coal Co.*, No. 3:11-0009, 2011 WL 13153993, at *2 (S.D. W. Va. Dec. 19, 2011). It is also controlling; its "resolution will be completely dispositive of the litigation" as a "practical matter, whichever way it goes." *First Owners Ass'n of Forty Six Hundred Condo., Inc. v. Gordon Props.*, LLC No. 1:11CV255, 2011 WL 11706511, at *2 (E.D. Va. 2011 Apr. 15, 2011).

Second, "there is substantial ground for difference of opinion" on the question presented. *Compare Becker*, 39 F.4th at 355–56; *Eckert/Wordell*, 756 F.3d at 1100; *Casa Arena Blanca*, 2022 WL 839800, at *4–5, *with Newman*, 23 F.4th at 398–400; *Lavigne*, 967 F.3d at 1120 n.7. The Fourth Circuit has not cited any of those opinions, and none of its caselaw citing

*Henry Schein* addresses this related issue. *See Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010).

Third, immediate appeal materially advances this litigation. At its core, the dispute in this case is whether Dr. Isernia bargained for the right to litigate issues related to the enforcement of his arbitration provision, or whether he must arbitrate those issues instead. The motion-to-compel stage is the only opportunity that the federal courts have to get this issue right. If the court mistakenly sends the parties to arbitration, later federal court review will be sharply circumscribed. *See* 9 U.S.C. § 10. And while the FAA generally prohibits an appeal "from an interlocutory order . . . directing arbitration to proceed," it makes a specific exception for appeals certified under 28 U.S.C. § 1292(b). *See id.* § 16(b)(2). A ruling from the Fourth Circuit on this issue would be dispositive regarding the forum in which Dr. Isernia gets to resolve the instant third-party enforcement issues, which might in turn determine the forum in which his merits claims are resolved. *Contra Long v. CPI Sec. Sys., Inc.*, No. 3:12-cv-396, 2013 WL 3761078, at *3 (W.D.N.C. July 16, 2013) (denying interlocutory appeal in part because the court would have a chance to revisit its ruling after discovery).

The FAA is a staple of litigation in the federal courts. This means that cases are often distinguishable from each other both on their facts and as to the arguments presented by the parties. Twice now, this court has done its level best to determine whether it must compel arbitration. There is authority on both sides of this issue, which neither the Supreme Court nor the Fourth Circuit has addressed squarely. If this court has erred, Dr. Isernia may be forced to arbitrate his claims even though he has bargained for the right to present them in federal court. This court will have no opportunity to correct its alleged error if the arbitrator decides

that the non-signatories are entitled to enforce Dr. Isernia's arbitration agreement against Dr. Isernia and the arbitrator further decides that one or more of Dr. Isernia's claims is arbitrable.

Accordingly, the court is of the opinion that the question upon which this case turns is a controlling question of law about which there are substantial grounds for difference of opinion and an immediate appeal can materially advance this litigation. Dr. Isernia will be invited to apply to the Fourth Circuit for an interlocutory appeal on the certified question, and the pending arbitration proceedings will be stayed by court order.

VIII.

Dr. Isernia's motion for reconsideration (ECF No. 26) will be denied. Pursuant to 28 U.S.C. § 1292(b), Dr. Isernia may apply to the Fourth Circuit within ten days of the date of the accompanying order. Any arbitration proceedings related to this matter will be stayed pending the Fourth Circuit's resolution of Dr. Isernia's application. Alternatively, the stay will dissolve upon the expiration of Dr. Isernia's deadline to apply to the Fourth Circuit if he chooses not to do so, or upon the court's receipt of a communication from Dr. Isernia stating that he does not intend to apply to the Fourth Circuit for recognition of his interlocutory appeal, whichever happens sooner.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 6th day of September, 2022.

_/s/ Thomas T. Cullen_

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE